UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BITE TECH, INC., *et al.*,

    Plaintiffs,

    v.

X2 IMPACT, INC.,

    Defendant.
_____/

No. C-12-5888 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER**

**(Docket No. 13)**

## I. INTRODUCTION

Plaintiffs Bite Tech, Inc. and CustMbite LLC assert a single cause of action for patent infringement against Defendant X2 Impact, Inc. ("X2") based on X2's alleged use of CustMbite's patented impact-sensing mouthguard technology. Bite Tech is also currently suing X2 in the Western District of Washington regarding the termination of a licensing agreement between the parties, as well as X2's alleged misappropriation of Bite Tech's trade secrets. X2 now brings the current motion to transfer venue to the Western District of Washington based on this ongoing litigation between X2 and Bite Tech. For the reasons stated herein, the Court **GRANTS** X2's motion to transfer.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A.   <u>Licensing Agreement and Relationship Between X2 and Bite Tech</u>

On May 25, 2011, X2 entered into a Technology License Agreement (the "License Agreement") with Bite Tech, under which Bite Tech received a worldwide, exclusive license to "any and all mouthguard based head impact sensing or monitoring system products for sports, military or

medical purposes" that incorporated any patent or patent applications controlled or owned by X2, including the legal rights thereto. Mack Decl. ¶ 3, Ex. A §§ 1.17, 1.20, 1.26-.27, 2.1. In addition, the License Agreement provides that any "Joint Invention" resulting from their collaboration would be jointly owned by the parties. *Id.* Ex. A §§ 2.3.1, 5.5. It defines Joint Inventions as "any new discoveries or inventions made or first reduced to practice during the Term in connection with the development, manufacture or commercialization of" the mouthguard based head impact sensing or monitoring system products that are the subject of the License Agreement. *Id.* Ex. A §§ 1.20, 5.5. The Agreement provides that it is to be construed in accordance with the laws of the State of Washington and that the parties "consent to the exclusive jurisdiction of the courts of the State of Washington for any claim brought by or on behalf of [Bite Tech] . . . and expressly waive any objections or defense based upon lack of personal jurisdiction or venue." *Id.* Ex. A § 8.1. For the duration of the License Agreement, X2 worked with Bite Tech to research, develop, clinically test, manufacture, and support the commercialization of mouthguard-based head impact sensing products. *Id.* ¶ 4.

Meanwhile, in November 2011 Bite Tech and CustMbite entered into a Purchase Agreement whereby Bite Tech obtained CustMbite's patent, U.S. No. 7,950,394 ("the '394 Patent") for exclusive use. Elkin Decl. ¶ 6, Ex. A §§ 2.1-.2. The '394 Patent, which is for a "Mouthguard Formed of Propylene/Alpha-Olefin Polymer Elastomer," repeatedly refers to "Vistamaxx," a thermoplastic polyolefin elastomer manufactured by ExxonMobil Chemical, as a suitable material for the mouthguard. Scher Decl. Ex. A at 4-5.

X2 terminated the License Agreement with Bite Tech on March 26, 2012. Mack Decl. ¶ 4. X2 alleges that it terminated the License Agreement pursuant to section 7.3.2 thereof, which permits termination if Bite Tech becomes insolvent. *Id.* The parties dispute Bite Tech's insolvency. *Id.*

B.   Lawsuits

Bite Tech sued X2 in the United States District Court for the Western District of Washington on July 24, 2012 for breach of the License Agreement, trade secrets misappropriation, and various common law claims based on X2's terminating the Licensing Agreement, refusal to return advance royalty payments for a mouthguard jointly developed by the two companies, and alleged misuse of

1  Bite Tech's intellectual property following termination of the License Agreement. *See* Graff Decl.
2  Ex. 1 (*Bite Tech, Inc. v. X2 Impact, Inc.*, No. 12-1267 RSM (W.D. Wash.)).  The complaint asserts
3  that "[n]either in the Agreement [n]or elsewhere has Bite Tech licensed any of its intellectual
4  property to X2," that "Bite Tech is the owner of more than 45 US and foreign patents," and that,
5  "[s]ince its purported termination of the Agreement, X2 has misused Bite Tech's intellectual
6  property." *Id.* ¶ 23.  X2 counterclaimed on September 24, 2012, asserting similar claims. *See* Graff
7  Decl. Ex. 2.  Discovery is now well underway in this case, including both parties having served and
8  responded to written discovery, multiple depositions having been taken, and numerous subpoenas
9  having been served.  *See* Graff Decl. Exs. 3-9.

10  Bite Tech subsequently brought the instant case in this Court on November 16, 2012,
11  asserting, along with CustMbite, that X2 has infringed the '394 Patent by manufacturing, using,
12  selling, offering for sale, and encouraging the use of infringing mouthguards.  *See* Compl. ¶¶ 8-15.

### C. Parties' Competing Theories

14  As the import of the License Agreement in the patent dispute could weigh on a decision
15  whether to transfer, the Court explores each party's theories of the two cases to determine the
16  relationship of the License Agreement to the asserted infringement of the '394 Patent.

#### 1. X2's Theory

18  X2 asserts that, during the term of the License Agreement, it "worked with the Vistamaxx
19  material, with Bite Tech's knowledge and consent, and ultimately achieved a new discovery by
20  joining Vistamaxx with additional materials made of a hard polypropylene and thermoplastic
21  elastomer to form a boil and bite mouthguard with a hard structural frame." Mack Decl. ¶ 7.  X2
22  asserts that the '394 Patent is for a mouthguard made entirely of Vistamaxx and thus does not
23  include a hard structural frame. *Id.*  X2 asserted in March 2012 that the boil and bite mouthguard is
24  *not* a Joint Invention under the terms of the License Agreement. *See* Decl. of Ryan Scher in Opp'n
25  to Mot. to Transfer ¶ 4, Ex. B.[1]  However, following the filing of this case, X2 indicated in an

---

[1] X2 objects to Exhibits B and C to the Scher Declaration on the grounds that they are irrelevant, lack foundation, and, at least with respect to Exhibit C, are communications in contemplation of settlement. *See* Def.'s Reply 3-4.  Plaintiffs' relevance and foundation objections are without merit: the exhibits clearly speak to the relationship of the License Agreement to the alleged infringement in this case and are either self-authenticating, as in the case of Exhibit B being

1 interrogatory response in the Washington case that "the joining of Vistamaxx with additional
2 materials made of a hard polypropylene and thermoplastic elastomer to form a boil and bite
3 mouthguard with a hard structural frame" *was* a Joint Invention.  *See* Graff Decl. Ex. 5, Interrog. 14.
4    In short, X2's argument appears to have originally been that it did not use a Joint Invention
5 of the parties (thus not subjecting it to liability for potential trade secret misappropriation), but,
6 subsequent to the filing of this patent infringement lawsuit, that the alleged patent infringement
7 actually is subject to the Joint Invention clause of the License Agreement.

### 2. Bite Tech's Theory

On the other hand, Bite Tech asserts in the Washington case that X2 used "drawings, specifications, and diagrams of Bite Tech mouthguards, and other technical information *not* disclosed in Bite Tech's patents," but asserts in the instant case before this Court that X2 infringes on the '394 Patent by "engaging in unauthorized manufacture (or causing to be manufactured), use, sale and/or offer for sale of impact-sensing mouthguards (including, but not limited to the 'X-Guard' mouthguard) . . . ."  *See* Graff Decl. Ex. 1 (Wash. Compl.) ¶ 62; Compl. ¶ 11.

In sum, Bite Tech's theory appears to be that certain elements of X2's mouthguards misappropriate its trade secrets and that other elements of X2's mouthguards infringe on the '394 Patent.

### 3. Practical Relationship of Theories to License Agreement

It is readily conceivable that the License Agreement could play a part in both this litigation and the litigation in the Western District of Washington.  First, X2 appears to be manufacturing a product that potentially incorporates four different sources of intellectual property: (1) X2's own intellectual property; (2) Joint Inventions subject to the License Agreement; (3) Bite Tech's non-patent trade secrets; and (4) technology covered by the '394 Patent over which Bite Tech asserts a right to enforce.  Of course, Bite Tech's position is that X2 is solely using items (3) and (4) and X2's

---

on X2 letterhead, or are clearly within the purview of Scher's knowledge, as in the case of Exhibit C being sent to an attorney at Scher's firm.  On the other hand, as for X2's objection that Exhibit C is inadmissible pursuant to Federal Rules of Evidence, Rule 408, which prohibits use of settlement communications "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," it does appear that Exhibit C was introduced to disprove the validity of X2's claim that the boil and bite mouthguard is a Joint Invention.  Thus, Exhibit C is inadmissible.

1  position was that it is solely using item (1), but that, since the filing of this second lawsuit, it is using
2  items (1) and (2).

3        As discussed below, it is significant that the infringement claim may well turn on an
4  adjudication of the scope of the License Agreement.  For example, X2 may seek to assert that the
5  Joint Inventions clause constitutes an implied license of all Bite Tech intellectual property
6  incorporated into a Joint Invention, such as the '394 Patent.[2]  The same would apply to X2's defense
7  as to Bite Tech's asserted trade secrets claim.

## III. DISCUSSION

### A. Legal Standard

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In the instant case, X2 seeks a transfer to the Western District of Washington.  Plaintiffs do not argue that the Western District of Washington is a district where their action could not have been brought.  *See* Opp'n 8-9.  Accordingly, the only question is whether this Court should transfer the action for the convenience of parties and witnesses, and in the interest of justice.

A district court has discretion in deciding whether or not to transfer a case.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's decision to change venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge'").  The burden of justifying that the transferor forum, *i.e.*, the Northern District of California, is inappropriate lies with the party seeking transfer.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  The Ninth Circuit has noted that, in exercising its discretion, a court may consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3)

---

[2] The parties dispute whether Bite Tech or CustMbite owns the '394 Patent.  For purposes of this ruling, the distinction is unimportant.  Under either theory, Bite Tech at least controlled the '394 Patent, as it had an exclusive license to it.  If Bite Tech had no rights over the '394 Patent, its inclusion in this lawsuit would be superfluous.

> the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor". . . .

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (discussing private and public factors affecting the convenience of a forum).

Consistent with the above, courts in this district have commonly articulated the relevant factors as:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho–Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

B.      Factor-by-Factor Analysis

While X2 also argues that the first-to-file rule militates in favor of transfer, the Court need not consider this argument, as, even without it, the other factors weigh in favor of transfer.

First, the Court considers Plaintiffs' choice of forum. Deference to a plaintiff's choice of forum is "substantially reduced" where the plaintiff does not reside in the venue. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (quotation marks and citation omitted). Here, neither CustMbite nor Bite Tech reside in the Northern District of California. CustMbite is a New Jersey limited liability corporation with its principal place of business in Connecticut. Compl. ¶ 2. Bite Tech is a Minnesota corporation with its principal place of business in Connecticut. *Id.* ¶ 1. Their choice of forum is therefore entitled to "substantially reduced" deference. *See Williams*, 157 F. Supp. 2d at 1106. Moreover, Bite Tech expressly consented to a broad choice of forum clause in its License Agreement with X2, "consent[ing] to the exclusive jurisdiction of the courts of the State of Washington for any claim brought by or on behalf of [Bite Tech] . . . and expressly waiving any objections or defense based upon lack of personal jurisdiction or venue." *See* Mack

Decl. Ex. A § 8.1. The clause might be broad enough to cover the infringement claims at bar, but even if the claims before this Court are not covered by the venue clause, it is significant that this case is closely related to the License Agreement. Not only is the subject matter similar, both cases arising out of the same relationship between Bite Tech and X2, but the License Agreement could well play a material role in the instant case. Thus, Bite Tech's consent to the venue in Washington as well as its decision to sue on its trade secret claim in Washington undercuts the strength of Bite Tech's choice of forum in this related case.

Second, the Court considers the convenience of the parties. The Western District of Washington is clearly the more convenient forum for the parties. X2 is a Washington corporation with its principal place of business in Seattle, Washington. Compl. ¶ 3. Plaintiffs admit that, if this case were to go to trial, *all* of X2's party witnesses would have to travel to this district to testify. Pls.' Opp'n 7. As neither CustMbite nor Bite Tech are based in California or Washington, the Northern District of California and the Western District of Washington are of equal convenience to them. *See* Compl. ¶¶ 1-2. Thus, this factor clearly weighs in favor of transfer.

Third, the Court considers the convenience of the witnesses. Here, Plaintiffs have identified the various Stanford sports teams, the 49ers, and Dr. Garza as key non-party witnesses in this case for whom this district would be convenient. Pls.' Opp'n 7. However, these witnesses are unlikely to be essential to a determination of the action. In this patent infringement case, the fact that certain witnesses in this district used or bought the disputed product will likely be a relatively small part of the proof for Plaintiffs' case. The focus will likely be on the nature and structure of X2's product. Even if these California witnesses are required to give testimony, it may well be on matters not in dispute or readily subject to proof. Moreover, X2 has proffered evidence that "similar deployments" have been made at the University of Washington, the University of Notre Dame, the University of Michigan, and the University of North Carolina, as well as at high schools in Washington State; while X2 has not asserted that these deployments are identical to that used by Stanford and the 49ers, there is a likelihood that witnesses from other parts of the country, including in Washington, will be relevant. *See* Mack Decl. ¶ 13. Since it is not clear where the center of gravity for witnesses will be, this factor is, at best, neutral.

Fourth, the Court looks to ease of access to the evidence. As for documentary evidence, "[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden." *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (2007). The parties do not discuss physical evidence but, given that the disputed product is only a mouthguard, which, along with associated documents, would be easy to transport, it is conceivable that the difference in ease of access would be negligible between the two venues. Thus, ease of access to evidence is neutral between the two venues.

Fifth, the Court looks to familiarity of each forum with the applicable law. Here, the sole claim of infringement arises under federal patent law, with which the two venues have equal familiarity. *See* Compl. ¶¶ 8-15. If anything, to the extent the License Agreement is brought into the case, it is to be construed pursuant to Washington state law. *See* Mack Decl. ¶ 3, Ex. A § 8.1. Thus, this factor weighs in favor of transfer.

Sixth, the Court looks to the feasibility of consolidation with other claims. "The feasibility of consolidation is a significant factor in a transfer decision, although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for C.D. Cal.*, 503 F.2d 384, 389 (9th Cir. 1974). As discussed above, the two suits involve overlapping issues, such as to what extent X2's actions unlawfully infringe on the '394 patent or constituted unauthorized misappropriation of Bite Tech's trade secrets in view of the Joint Invention clause. These cases may be consolidated. While there is a difference in parties, Plaintiffs have not explained why the alleged patent owner, CustMbite, though not a party to the current Washington case, could not be joined therein pursuant to Federal Rule of Civil Procedure 19 because CustMbite may have intellectual property potentially affected by the Washington litigation. Even if the Western District of Washington could or did not consolidate these cases, it would at least have the ability to relate and coordinate the two cases, thereby streamlining the litigation. Thus, this factor weighs strongly in favor of transfer.

Seventh, the Court looks to any local interest in the controversy. X2 and all of its employees reside in Washington, which suggests that at least some of the acts resulting in infringement took

place there and that relevant documents and witnesses are likely located in Washington. Moreover, X2 is a Washington corporation with its principal place of business in Washington. This case, on the other hand, has almost no relationship with this forum except that some third party witnesses whose role is likely to be minor reside here.

Lastly, this Court looks to the relative court congestion and time of trial in each forum. Neither party contests that the relative court congestion and time of trial in each forum is a factor affecting venue. *See* Pls.' Opp'n 9. Thus, this factor is neutral.

### IV. CONCLUSION

In sum, nearly all of the factors to consider in determining transfer of venue either weigh in favor of transfer or are neutral and thus the Court **GRANTS** X2's motion to transfer.

This order disposes of Docket No. 13.

IT IS SO ORDERED.

Dated: March 7, 2013

_____
EDWARD M. CHEN
United States District Judge